UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                          CRIMINAL NO. 3:22-CR-13-DPJ-LGI

JONATHAN BAREFOOT, ET AL.

ORDER

The parties in this criminal case have filed three motions in limine. After fully considering the motions, the Court grants the Government's motion [166] in part and otherwise reserves its rulings; grants Defendant Adam Earnest's motion about Obamacare [167] in part; and denies Earnest's tax-loss motion [168].

I.    Background

On February 8, 2022, the grand jury indicted Jonathan Barefoot, Adam Earnest, Christopher Randell, James Klish, Dwight Stamey Jr., and John Wells, Jr., on tax-fraud charges. According to the indictment, Earnest owned Sunbelt Tax Services, and the others worked for that company. In general, Defendants are charged with conspiring to falsely inflate individual tax returns (18 U.S.C. § 371) and filing inflated returns (26 U.S.C. § 7206(2)). Wells entered a guilty plea; the other Defendants are set for trial October 23, 2023.

II.   Standards

The parties present both permissive motions in limine (seeking to admit evidence) and prohibitive motions in limine (seeking to exclude evidence). Though at least one Defendant challenges the propriety of granting a permissive motion in limine, "[i]t is well-established that motions in limine may be used to secure a pretrial ruling that certain evidence is admissible." *Bond Pharmacy, Inc. v. AnazaoHealth Corp.*, No. 3:11-CV-58-CWR-FKB, 2012 WL 3052902, at *2 (S.D. Miss. July 25, 2012). Prohibitive motions

> prohibit[ ] opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quoting Robert T. Hyde, Jr., Commentary, *The Motion in Limine: Pretrial Trump Card in Civil Litigation*, 27 U. Fla. L. Rev. 531, 531 (1975)). An order granting a motion in limine does not preclude the losing party from revisiting the issue at trial, outside the jury's presence. *See El-Bawab v. Jackson State Univ.*, No. 3:15-CV-733-DPJ-FKB, 2018 WL 3715836, at *2 n.1 (S.D. Miss. Aug. 3, 2018).

III.   Motions

    A.   Government's Motion [166]

The Government seeks a pretrial order permitting it to introduce (1) evidence about "prior IRS audits of the Defendants, (2) evidence of false returns prepared by Defendants during the course of the conspiracy that are not specifically referenced in the indictment, and (3) evidence of false returns prepared by Defendants prior to the start of the conspiracy for trial witnesses." Gov't Mot. [166] at 1. The Government also seeks an order preventing Defendants from offering evidence that they correctly prepared other tax returns. *Id.* at 8–10. Defendants Earnest, Barefoot, and Stamey oppose the motion.

The Government's motion addresses alleged bad acts other than those charged in the Indictment. That typically triggers consideration under Federal Rule of Evidence 404. Rule 404(b)(1) precludes evidence of other wrongs or bad acts when used to prove a person's character and that he or she "acted in accordance with the character." But Rule 404(b)(2) offers an exception. That subpart allows evidence of other wrongs or bad acts when offered "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

These rules apply to evidence extrinsic to the charged offense; intrinsic evidence does not fall under Rule 404. *United States v. Yi*, 460 F.3d 623, 632 (5th Cir. 2006). Evidence is "'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or other acts were necessary preliminaries to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) (quoting *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982)).

Even if the other-acts evidence survives Rule 404—either because it is intrinsic or because it satisfies Rule 404(b)(2)—the Court must still consider whether it violates Federal Rule of Evidence 403. *See generally United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc) (outlining two-step test involving Rules 404(b) and 403). That rule allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. With those guideposts, the Court turns to the Government's motion.

***IRS Audits and Penalties.*** The Government hopes "to introduce evidence that the IRS previously conducted earned income tax credit due diligence compliance audits of Defendants Earnest, Barefoot, and Randell for their work as tax return preparers as early as 2010." Gov't Mot. [166] at 2. This evidence will show the IRS repeatedly found "Defendants had not conducted sufficient due diligence and, in most cases, assessed penalties." Gov't Mot. [166] at 3.

The Government is "not seeking to introduce the audits for the proposition that the tax returns underlying those audits were false. Instead, the United States is seeking to show that the IRS repeatedly notified the Defendants that they were preparing returns without sufficient

3

documentation." Gov't Reply [180] at 4. That is essentially the same thing charged here. *See* Indictment [4] at 3.

If the Government's description of the evidence is accurate, then it may have a compelling argument that the audits fall under Rule 404(b)(2). *See United States v. Williams*, 30 F.4th 263, 267 (5th Cir. 2022) (noting that prior IRS issues "may well have permissible uses under Rule 404(b), like proving . . . willful intent or knowledge of tax obligations") (citing *United States v. Boyd*, 773 F.3d 637, 643 (5th Cir. 2014) (holding that evidence of late filings and warning notices from IRS were admissible to prove defendant's willfulness in evading taxes and knowledge of tax system)).

That said, the Court has not seen the evidence. And while it has no reason to doubt the Government's description, it seems risky to rule based only on a party's argument about what the evidence would show. That is especially true under Federal Rule of Evidence 103(b): "Once the court rules definitively on the record—either before or at trial—a party need not renew an objection . . . to preserve a claim of error for appeal." Thus, an incorrect ruling could bake in reversible error before the trial begins. The more prudent approach is to have a pretrial hearing so the Court can see what the Government intends to offer and then hear the parties' arguments.

***False returns prepared before conspiracy for trial witnesses.*** Here again, the Court has not seen the evidence and lacks important context. For example, it is unclear how the prosecution will use the evidence or how many tax returns it hopes to offer. This issue will be addressed at the hearing.

***Uncharged acts of alleged false returns during the conspiracy.*** This one is different. The Government says it plans to offer evidence of other false returns prepared during the

conspiracy. Gov't Mot. [166] at 5–7. But it then says, "there is no need for the court to preemptively rule on this evidence." *Id.* at 5. Accordingly, the Court reserves this issue.

**Good Acts Evidence.** The Government anticipates evidence from Defendants showing that they prepared other returns correctly. It argues that "evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." Gov't Mot. [166] at 8 (quoting *United States v. Dobbs*, 506 F.2d 445, 447 (5th Cir. 1975)).

Defendants disagree. According to them, if the Government can offer other bad acts, then they should be able to offer good ones: "What is good for the goose is good for the gander." Stamey Resp. [173] at 3; *see also* Earnest Resp. [174] at 8. But Defendants offer no legal authority suggesting such a rule in this context. Instead, Rule 404(b)(2) allows bad-acts evidence for limited reasons, while Rule 405(b) precludes specific instances of good conduct unless "a person's character or character trait is an essential element of a charge." That's not the case.

Defendants' other arguments also fall short. For example, Barefoot says the Government is guessing at his defense and he might not offer examples of correct returns. *See, e.g.*, Barefoot Resp. [172] at 8. But that does not make the evidence admissible. He also argues that the motion should be denied under the ripeness doctrine. *Id.* at 9. But Barefoot's cited authority never considers the ripeness of an evidentiary ruling; it considers normal standing and jurisdictional issues. *See Roman Cath. Diocese of Dall. v. Sebelius*, 927 F. Supp. 2d 406, 409 (N.D. Tex. 2013). For his part, Earnest adds that the Government "seeks to improperly restrict the defense case." Earnest Resp. [174] at 1. But his defense may only use admissible evidence.

Absent a better argument from Defendants, the Court agrees that they should not offer correctly prepared returns to show conforming conduct. That said, the Court cannot anticipate

every way Defendants might wish to use uncharged returns to support their defenses (whatever they may be). Accordingly, the Court will not make a definitive ruling on this topic. If Defendants wish to use other returns at trial, they must first alert the Court outside the jury's presence.

      B.      Earnest Motion Regarding Obamacare [167]

Earnest asks the Court "to exclude from trial any evidence or testimony related to the health insurance business located at 129A East McDowell Road in Jackson, MS, including the 'Obamacare' signage which adorned the entrance." Earnest Mot. [167] at 1. Earnest owned both Sunbelt and a separate insurance business located next to and in the same strip mall as Sunbelt; "[t]he two businesses shared a common interior office space." *Id.* at 2.

According to Earnest, "evidence and testimony about Obamacare specifically, or the health insurance business generally[,] should be excluded from trial" as irrelevant under Rule 401. *Id.* Alternatively, he says any such evidence "should be excluded under Rule 403 because it has little probative value[, which] would be substantially outweighed by the danger of unfair prejudice, misleading the jury, and confusion." *Id.*

The Government says it "does not intend to put the health insurance portion of Defendant's business at issue in its case in chief," but "some witnesses may reference that portion of the business in explaining their employment at Sunbelt . . . or how they encountered Sunbelt." Gov't Resp. [176] at 2. "For example, one former employee who is expected to testify worked both as the receptionist for the tax return preparation business and a salesperson for the health insurance portion of the business." *Id.* "Likewise, the [G]overnment may show photographs of the exterior of the business, which Earnest acknowledges included a sign entitled 'Obamacare,' and witnesses may describe the business location with reference to the signage."

*Id.*  The Government believes this "limited usage" "will orient the jury as to the roles of employee witnesses and identify the location where the witness had their tax return prepared." *Id.* at 3.  Earnest did not reply to the Government's response.

Federal Rule of Evidence 401 explains that "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Generally, "[e]vidence in criminal trials must be strictly relevant to the particular offense charged." *United States v. Carrillo*, 660 F.3d 914, 926 (5th Cir. 2011) (quoting *United States v. Templeton*, 624 F.3d 215, 221 (5th Cir. 2010)).  But as the advisory committee adopting Rule 401 explained, "[e]vidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."  Fed. R. Evid. 401, advisory committee notes to 1972 proposed rules.  So "even though evidence may not relate directly to the defendant's innocence or guilt, or even to a fact in dispute, evidence is relevant when it provides background information about the defendant or the offenses charged." *United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012).

Earnest never really explains why facts about his health-insurance business are irrelevant, and the Court finds that the Government's limited use of that information would be probative.  But the term "Obamacare" seems less relevant, and the Government has not explained why it matters.

Turning to Rule 403, Earnest says "Obamacare" is "a politically sensitive term," and he fears that evidence that he associated himself with Obamacare creates a "significant risk of unfair prejudice" to his defense.  Earnest Mot. [167] at 3.

> The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a

7

> ground different from proof specific to the offense charged. *See generally* 1 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence ¶ 403[03] (1996) (discussing the meaning of "unfair prejudice" under Rule 403). So, the Committee Notes to Rule 403 explain, "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

*Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403, advisory committee notes).

Starting with the health-insurance business, the Government has adequately explained its limited need for this evidence, whereas Earnest's prejudice arguments are not persuasive. His motion [167] is denied to the extent that he seeks to exclude evidence related to the health-insurance business. But the Government has not shown the probative value of attaching the word "Obamacare" to that business. That term has been politically charged, and without any real probative value in using it, Rule 403 applies. If the Government wants to show the store front, it can always blur the name on the other side of the building. Accordingly, Earnest's motion [167] is granted to the extent that he seeks to exclude use of the term "Obamacare."

   C.  Earnest Motion to Exclude Tax-Loss Estimate [168]

Earnest seeks an order "prohibiting the Government from offering evidence of any alleged tax loss at trial." Earnest Mot. [168] at 1. That request comes in two flavors. First, he claims that the tax loss is irrelevant to the charged crimes. Second, Earnest believes that the Government's disclosed summary witness (IRS Revenue Agent Trenika Speights-Durr) intends to offer expert testimony about the tax loss even though the Government elected to list her as lay rather than expert witness. *Id.* Earnest also says her summary testimony would violate Rules of Evidence 401, 403, and 1006.

8

***Whether the tax loss is admissible.***  Earnest says tax loss is irrelevant to the charged offenses under 18 U.S.C. § 371 and 26 U.S.C. § 7206(2).  *Id.* at 3.  But he offered no rebuttal to the Government's contrary arguments.

"[T]he fraud covered by [§ 371] 'reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'"  *Tanner v. United States*, 483 U.S. 107, 128 (1987) (quoting *Dennis v. United States*, 384 U.S. 855, 861 (1966)); *see United States v. Green*, 47 F.4th 279, 289–90 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 747, *and cert. denied sub nom. Selgas v. United States*, 143 S. Ct. 1058 (2023).  Proof that the alleged conspiracy in this case achieved its objective and defeated the IRS's tax-collection function is relevant to prove the agreement was reached and that overt acts occurred.

As for § 7206(2), that statute requires proof that the false statements were material.  *United States v. Clark*, 577 F.3d 273, 287–88 (5th Cir. 2009).  A statement is material under § 7206(2) "if it has 'a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed.'"  *United States v. Ramseur*, 793 F. App'x 245, 248 (5th Cir. 2019) (quoting *United States v. Richardson*, 676 F.3d 491, 505 (5th Cir. 2012)).  If the alleged fraudulent acts resulted in tax losses, then that could indicate a tendency to influence the IRS, making them material.  *Clark*, 577 F.3d 273, 287–88 (finding that similar evidence was properly admitted in tax-fraud case).

The Government also notes that the amount of the tax loss is relevant to the overall scheme and Defendants' motive.  The Government hopes to prove that Defendants tried to generate more business by exaggerating their clients' returns.  Gov't Resp. [177] at 3–4.  Evidence of motive is generally relevant and admissible.  *See* Fed. R. Evid. 404(b)(2).  Finally,

9

Earnest has not shown that Rule 403 concerns substantially outweigh the probative value of this evidence.

***Whether the summary witness may testify.*** When the Government designated Revenue Agent Speights-Durr, it asserted that she would offer lay testimony as a summary witness but then hedged its bet: "[S]hould her testimony be deemed by the Court as expert testimony under those rules, the United States hereby gives notice of her testimony pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G)." Gov't Designation [164] at 2. The Government then gave full notice under that rule, including a summary of her expected testimony:

> Because these records are voluminous—the tax returns alone are hundreds of pages—the Government will call RA Speights-Durr to summarize and identify the salient portions of those records. To that end, RA Speights-Durr is expected to summarize the process of filing federal income tax returns; explain and summarize the operation and purpose of various IRS forms admitted into evidence in this case, including IRS Form Schedule C, Profit or Loss from Business ("Schedule C"), IRS Form Schedule A, Itemized Deductions ("Schedule A"), and IRS Form 8863, Education Credits ("Form 8863"); summarize how the inclusion or exclusion of income, deductions, or other credits affected the amount of tax an individual owed; and present summaries of voluminous evidence under Federal Rule of Evidence 1006.
>
> RA Speights-Durr is also expected to explain how the false items that the Defendants reported on their clients' tax returns inflated the claimed refund on those returns by calculating the correct tax liability based on client testimony at trial RA Speights-Durr has already conducted calculations of corrected tax liability for clients interviewed by the Government, and documented those calculations on IRS Forms 4549, Income Tax Examination Changes ("RARs"), which she prepared and electronically signed. RA Speights-Durr prepared these preliminary RAR's by adjusting the taxpayers' returns based on information reported to the IRS and removing certain false education credits, Schedule C income, and Schedule A deductions that the Defendants reported on the taxpayers' returns. As a summary witness, RA Speights-Durr would ultimately modify these RAR's to include only adjustments based on evidence admitted at trial and would then testify to those calculations to explain the tax effect of the false items.

*Id.* at 2–3. The Government says these subjects constitute lay testimony because Speights-Durr will summarize the evidence and "perform simple calculations to determine the correct tax

10

liability of the Defendants customers." Gov't Resp. [177] at 6. Earnest says the testimony falls under Rule 702.

Under Rule 701, a lay witness may offer certain opinions provided they are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." "The essential difference between 'lay and expert testimony is that lay testimony results from a process of reasoning familiar in everyday life, whereas expert testimony results from a process of reasoning that can only be mastered by specialists.'" *United States v. Patel*, 485 F. App'x 702, 717 (5th Cir. 2012) (quoting *United States v. York*, 600 F.3d 347, 360 (5th Cir. 2010)).

If Speights-Durr offers the testimony the Government disclosed, then her testimony falls under Rule 702, not Rule 701. For example, "calculating the correct tax liability," Gov't Designation [164] at 2, requires "technical[ ] or other specialized knowledge," Fed. R. Evid. 702; *see United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993) (holding that revenue agent's summary testimony in tax case required expertise under Rule 702).

But that only takes Earnest so far. While he correctly argues that the designated testimony falls under Rule 702, the Government alternatively designated Speights-Durr under that rule. *See* Gov't Designation [164]. Earnest does say in reply that "[t]he Court can and should prevent the government from leaving the question of whether RA Speights-Durr's testimony is expert testimony for the Court to figure out." Earnest Reply [181] at 1. But he offers neither argument nor legal authority explaining why the Government should be prohibited from alternatively designating the witness as an expert. Nor does he offer any argument suggesting that she lacks those qualifications. So, a finding that her proffered testimony falls under Rule 702 does not preclude it.

Earnest does make a few other points in passing. First, he says that the summaries might not match the evidence they summarize, though he has not yet seen the summaries. Earnest Mot. [168] at 6. If the summaries fail to faithfully summarize the admitted evidence, then he can object at trial. Second, he says the expert may not give legal opinions. *Id.* at 5. That's true. *See Est. of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999). But the designated testimony does not appear to offer legal opinions. Again, if the issue arises, Earnest can make a prompt objection. Third, Earnest cites Rules 401 through 403, but he never adequately explains why the designated testimony—summarizing the trial evidence about the disputed returns—is irrelevant or subject to Rule 403. Fourth, he says the witness should not be allowed to just read documents that speak for themselves. Earnest Mot. [168] at 6. But the Fifth Circuit allows witnesses to summarize otherwise voluminous evidence. *See United States v. Armstrong*, 619 F.3d 380, 385 (5th Cir. 2010).

The only other argument requiring attention is Earnest's belief that the designated testimony might violate Rule 1006, as happened in *United States v. Hart*, 295 F.3d 451 (5th Cir. 2002). *Hart* offers helpful guidance on the requirements for summary evidence. For example, the summary evidence must summarize evidence that has been admitted and is voluminous. *Id.* at 455. And the Fifth Circuit has given other warnings about the proper use of summary witnesses. *See, e.g.*, *Armstrong*, 619 F.3d at 385.

But the problem in *Hart* was the Government's attempt to establish the elements of the offense through the summary witness when the underlying evidence failed to do so. 295 F.3d at 455–56. The court also concluded that the summary witness offered substantive expert testimony though the Government never designated the witness as an expert. *Id.* at 459. This case is different because the Government has designated the witness as an expert. Moreover, the

Court has not yet seen the Government's case, so there is no way to tell whether the summary attempts to establish elements the admitted evidence failed to establish. Earnest's motion [168] is denied.

IV.   Conclusion

The Court has considered all arguments; those not mentioned would not change the holdings. For the reasons stated, the Court grants the Government's motion [166] in part and otherwise reserves its rulings; grants in part and denies in part Defendant Adam Earnest's motion about Obamacare [167]; and denies Earnest's tax-loss motion [168]. The parties are instructed to coordinate with Courtroom Deputy Shone Powell to set the reserved issues for hearing.

**SO ORDERED AND ADJUDGED** this the 28th day of September, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE